KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant United States Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619) 235-2757 (Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>KATHLEEN CORNELL JONES,<br><br>       Defendant. | Criminal Case No. 07CR3410-DMS<br><br>DATE:      January 25, 2008<br>TIME:      11:00 a.m.<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:<br><br>(1)   DISMISS INDICTMENT DUE TO UNCONSTITUTIONAL STATUTE;<br>(2)   DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION;<br>(3)   PRESERVE AND INSPECT EVIDENCE;<br>(4)   COMPEL DISCOVERY;<br>(5)   SUPPRESS STATEMENTS;AND<br>(6)   GRANT LEAVE TO FILE FURTHER MOTIONS.<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and A. DALE BLANKENSHIP, Assistant United States Attorney, and hereby files its Response and Opposition to the defendant's above-referenced motions together with Statement of Facts and Memorandum of Points and Authorities. This Response and Opposition is based upon the files and records of the case.

//

**I.**

**STATEMENT OF THE CASE**

On December 19, 2007, a federal grand jury for the Southern District of California returned a two-count Indictment, charging Defendant with (1) one count of importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960; and (2) one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Defendant was arraigned on the Indictment on December 20, 2007, and entered a not guilty plea.

**II**

**STATEMENT OF FACTS**

**A.     IMMIGRATION HISTORY**

Defendant is a United States citizen.

**B.     INSTANT OFFENSE**

On November 9, 2007, at approximately 11:15 a.m., Kathleen Cornell Jones, ("Defendant") entered the United States from Mexico at the San Ysidro, California, Port of Entry. Defendant was the driver of a Ford Aerostar passenger van bearing California license plate #6AZR625. Customs and Border Protection (CBP) Officer Lorenzo Tovar made contact with Defendant while conducting primary inspection in lane #24 at the Port of Entry. Defendant handed Officer Tovar her California driver's license and Officer Tovar asked Defendant where she was going. Defendant replied that she was going to her home in San Francisco, California. Officer Tovar twice asked Defendant if she was bringing anything back from Mexico. On each occasion, Defendant gave a negative customs declaration. Officer Tovar asked Defendant if the vehicle belonged to her, and Defendant stated that it did belong to her and that she had owned the vehicle for 6 months.

During Officer Tovar's interaction with Defendant, he noticed that she avoided eye contact, and that she was very jittery. Officer Tovar also noticed that Defendant constantly looked into her rear view mirrors at the vehicle directly behind her which was a Chevrolet Silverado pickup truck occupied by two males. Officer Tovar noticed that passenger in the Silverado was talking on a cell phone and watching Defendant.

1    Officer Tovar began a cursory inspection of the Defendant's van and noticed that the rear bench

2    seats appeared to be very bulky.  Officer Tovar went to the passenger-side, rear door and opened the

3    door.  Officer Tovar felt the seats which were hard to the touch.  During this time, Defendant became

4    very talkative and continued to look at the pickup truck behind her.  Officer Tovar observed cellophane

5    wrapped packages inside the rear passenger bench seats.  Officer Tovar then observed that the two

6    occupants in the pickup truck appeared very upset and the passenger hit the dashboard and slumped

7    down into his seat.  Officer Tovar called for assistance and other CBP officers arrived and escorted

8    Defendant to the Security Office, and took Defendant's van to the secondary lot for further inspection.

9    Officer Tovar next questioned the occupants of the Silverado pickup truck, then referred both

10   of them to secondary.

11   In the secondary inspection area, Officer Juan Lujan inspected the van.  While inspecting the

12   interior of the van, Officer Lujan observed numerous plastic wrapped packages in the two rear passenger

13   bench seats.  Officer Lujan ultimately removed 29 packages of marijuana from the bench seats with a

14   weight of 61.75 kilograms/135.85 pounds.

15   **C.    DEFENDANT'S STATEMENT**

16   Immigration and Customs Enforcement Agents Carol Bracamonte and Chris Lindung initiated

17   contact with Defendant and gathered biographical information.  During this time, Defendant stated that

18   she takes "Suboxone" due to a previous back injury.  Defendant explained that "Suboxone" is a pain

19   blocker.  Agents later determined that "Suboxone" is used for the treatment of opiate dependency.

20   At approximately 3:55 p.m., Agents Bracamonte and Lindung advised Defendant of her Miranda

21   rights.  Defendant acknowledged that she understood her rights and agreed to speak with Agents

22   Bracamonte and Lindung.  The rights advisement and subsequent statement made by Defendant were

23   recorded on a DVD.

24   Defendant stated that she purchased the van "a couple" of months prior to the date of her arrest

25   and that she registered the vehicle in her name.  Defendant stated that she previously had a Ford Probe,

26   but that it got "messed up," so her boyfriend found a vehicle for them.  Defendant stated that her

27   boyfriend lives in Mexico, and so she took the vehicle to the United States and registered it in her name.

28   Defendant stated that prior to her arrest, she had been in Mexico for 7 days visiting friends.  Defendant

1  stated that she crossed into the United States two-days prior to her arrest to get new license plates for

2  the vehicle because the license plates were stolen from the vehicle while it was in her boyfriend's

3  possession.  Defendant also stated that her boyfriend was arrested and incarcerated in Mexico, and so

4  the purpose for her most recent travel to Mexico was to get the vehicle back from him.  Defendant stated

5  that on the date of her arrest, she was on her way to go shopping at the outlet mall for her daughter.

6  Defendant denied knowledge of the drugs in the vehicle and then invoked her right to an attorney.

7  Defendant was returned to a holding cell in the security office.  Upon being returned to the

8  holding cell, Defendant asked Agent Lindung if she could tell him something, but that she wanted it off

9  the record.  Agent Lindung told Defendant that everything she told him could be added to the report and

10  then Defendant told him "never mind."

11  **D.    RECORDS CHECKS**

12  A check of the Treasury Enforcement Communication System indicates that Defendant was

13  arrested at the San Ysidro, California, Port of Entry on June 17, 2007, for alien smuggling.  Prosecution

14  was declined and Defendant was released on that same day.

15  **E.    CRIMINAL HISTORY**

16  Defendant was arrested for theft, in violation of Cal. Penal Code § 484(c) and the case was

17  resolved on December 12, 2005, through a diversionary sentence.  On June 2, 2006, Defendant was

18  convicted of theft, in violation of Cal. Penal Code § 484(c) and she was sentenced to 6 days' jail, and

19  36 months' probation.

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27

28

4

### III.

### DEFENDANT'S MOTIONS

A.   **MOTION TO DISMISS THE INDICTMENT BASED ON THE CHARGING STATUTE SHOULD BE DENIED**

#### 1.   The Drug Statutes are Constitutional

Defendant contends that the drug statutes are unconstitutional despite Ninth Circuit authority to the contrary.  See,  United States v. Buckland, 289 F.3d 558, 562 (9th Cir. 2002) (en banc); United States v. Mendoza-Paz, 286 F.3d 1104, 1109-10 (9th Cir. 2002).

The Ninth Circuit has already squarely and repeatedly rejected the claim that Apprendi rendered the federal drug laws facially unconstitutional.  See, e.g., United States v. Jimenez , 300 F.3d 1166 (9th Cir. 2002); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002); United States v. Carranza, 289 F.3d 634, 643 (9th Cir. 2002); United States v. Buckland, 289 F.3d 558, 562 (9th Cir. 2002) (en banc); United States v. Mendoza-Paz, 286 F.3d 1104, 1109-10 (9th Cir. 2002); United States v. Varela-Rivera, 279 F.3d 1174, 1175 n.1 (9th Cir. 2002).  See also Varela-Rivera, 279 F.3d at 1175 n.1 (recognizing that Buckland foreclosed the argument that 21 U.S.C. §§ 841, 952 and 960 are unconstitutional).

Sections 841, 952 and 960 do not specify who shall determine drug type and amount, or what burden of proof is required.  As a result, two constructions of these statutes are possible; one which construes drug type and amount as determinations to be made by the sentencing judge by a preponderance of the evidence (a construction that poses constitutional problems under Apprendi), and an alternative construction under which drug type and amount are findings to be made by the jury beyond a reasonable doubt (a constitutionally valid construction).

Faced with these two competing interpretations, and in the absence of clear congressional intent, the Ninth Circuit employed the constitutional avoidance doctrine.  Under that doctrine, every reasonable construction must be indulged in order to save a statute from unconstitutionality.  Buckland, 289 F.3d at 564.  Thus, where an otherwise acceptable construction of a statute would raise "serious constitutional problems," and where an alternative interpretation of the statute is "fairly possible ," courts are obligated to construe the statute to avoid such problems.  Id.  Because it is "fairly possible" to interpret drug type and quantity as determinations required to be made by the jury, and because that interpretation is constitutionally valid, the Ninth Circuit has interpreted 21 U.S.C. § 841 and its "structurally identical"

1  counterpart, 21 U.S.C. § 960, as requiring the jury to determine drug type and quantity beyond a

2  reasonable doubt.  Buckland, 289 F.3d 567-68; Mendoza-Paz, 286 F.3d at 1110.

3          **2.      The Indictment Need Not Allege Knowledge of Drug Type & Quantity**

4          Defendant claims that the drug type and quantity are elements of 21 U.S.C. §§ 841, 952, 960

5  offenses and must therefore be alleged in the Indictment.  Defendant's position is unsupported by the

6  law.

7          In United States v. Carranza, 289 F.3d 634, 643-44 (9th Cir. 2002), this Court reaffirmed

8  longstanding precedent that the government need not prove that  defendants knew the type or quantity

9  of controlled substance they were smuggling in order to sustain a conviction under the federal drug

10  statutes.  See also United States v. Salazar, 5 F.3d 445, 446 (9th Cir. 1993); United States v. Ramirez-

11  Ramirez, 875 F.2d 772, 774 (9th Cir. 1989).  The government must prove only that defendants knew

12  they were smuggling some type of controlled substance.  Carranza, 289 F.3d at 644.

13          Defendant, however, argues that Carranza should be ignored.  The Ninth Circuit revisited its

14  holding in Carranza after the decisions in Buckland and Mendoza-Paz in United States v. Hernandez,

15  322 F.3d 592, 602 (9th Cir. 2003).   In Hernandez, the court rejected the mens rea argument made by

16  the appellant,  concluding:

> [Appellant] argues that the reasoning behind our decisions in Buckland and
> Mendoza-Paz require the government to prove that [Appellant] had the
> requisite mens rea with respect to both the type and quantity of drug he
> possessed and imported. This challenge is foreclosed by United States v.
> Carranza, 289 F.3d 634, 644 (9th Cir.2002) ("A defendant charged with
> importing or possessing a drug is not required to know the type and amount
> of the drug.").

21  Id.

22          This Court should reject Defendant's attempt to read into the drug statutes a new mens rea

23  element.  Defendant's motion to dismiss should be denied and her request for Grand Jury transcripts

24  should also be denied..

25          **B.      THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND
          THE INDICTMENT SHOULD NOT BE DISMISSED**

26          1.      Introduction

27          Defendant makes contentions relating to two separate instructions given to the grand jury during

28  its impanelment by District Judge Larry A. Burns on January 10, 2007. [Def. Mot. at 2.]    Although

1    recognizing that the Ninth Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005)

2    (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge

3    Burns went beyond the text of the approved instructions, and by so doing rendered them improper to

4    the point that the Indictment should be dismissed.

5         In making his arguments concerning the two separate instructions Defendant urges this Court

6    to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were

7    discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992).   Concerning the first attacked

8    instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers

9    over grand jury procedures.   This is a practice the Supreme Court discourages as Defendant

10   acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's

11   operational separateness from its constituting court, it should come as no surprise that we have been

12   reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury

13   procedure. ").  [<u>Id.</u>]  <u>Isgro</u> reiterated:

14            [A] district court may draw on its supervisory powers to dismiss an indictment.
         The supervisory powers doctrine "is premised on the inherent ability of the federal
15       courts to formulate procedural rules not specifically required by the Constitution or
         Congress to supervise the administration of justice."  <u>Before it may invoke this power,</u>
16       <u>a court must first find that the defendant is actually prejudiced by the misconduct.</u>
         Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free
17       from the substantial influence of [the misconduct]"-a dismissal is not warranted.

18   974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction, in an

19   attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution

20   as a reason to dismiss the Indictment.  [Def. Mot at 17. ("A grand jury so badly misguided is no grand

21   jury at all under the Fifth Amendment").]  Concerning that kind of a contention <u>Isgro</u> stated:

22            [A] court may dismiss an indictment if it perceives constitutional error that interferes
         with the grand jury's independence and the integrity of the grand jury proceeding.
23       "Constitutional error is found where the 'structural protections of the grand jury have
         been so compromised as to render the proceedings fundamentally unfair, allowing the
24       presumption of prejudice' to the defendant."  Constitutional error may also be found "if
         [the] defendant can show a history of prosecutorial misconduct that is so systematic and
25       pervasive that it affects the fundamental fairness of the proceeding or if the independence
         of the grand jury is substantially infringed."

26

27

28

7

974 F.2d at 1094 (citation omitted).[1]

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.   It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[2] 408 F.3d at 1203 (footnote omitted).   "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law;  it receives no briefs or arguments from the parties.   The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'"  <u>Id.</u>

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.   The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .   The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

---

[1]    In <u>Isgro</u> the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries.  They did not prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment."  (relying on <u>Williams</u>)).

[2]    The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.  "We recognize and do not discount that some grand jurors might <u>in fact</u> vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all the reasons we have discussed, there is <u>no post hoc</u> remedy for that;  the grand jury's motives are not open to examination."  408 F.3d at 1204 (emphasis in original).

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

        2.    The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Defense Exhibit A (Reporter's Partial Transcript) pp. 8-9.[3/]

Defendant acknowledges that in line with Navarro-Vargas, Judge Burns instructed the grand jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you.'" [Def. Mot. at 3.] Defendant notes, however, that the instructions go beyond that, however, and tell the grand jurors that, "should you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient'." [Def. Mot. at 9.] Defendant contends that this addition to the approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors disagree with

---

    [3/]    Defense Exhibit A (Reporter's Partial Transcript) recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted, to include redaction of the individual names, to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the Supplemental Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

1    a proposed prosecution." [Def. Mot. at 9.]  Defendant further contends that the flat prohibition was

2    preemptively reinforced by Judge Burns when he excused three potential jurors.

3         In concocting his theory of why Judge Burns erred, Defendant posits that the expanded

4    instruction renders irrelevant the debate about what the word "should" means.  [Def. Mot. at 10.]

5    Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they

6    disagree with a proposed prosecution." [Def. Mot. at 10.]  This argument mixes-up two of the holdings

7    in Navarro-Vargas in the hope they will blend into one.  They do not.

8         Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of

9    the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by

10   Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

11   expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact in

12   grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his rights,

13   and within the law, when he excused the three prospective grand jurors because of their expressed

14   inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind the impaneled

15   grand jurors that they could not question the wisdom of the laws.  As we will establish, this reminder

16   did not pressure the grand jurors to give up their discretion not to return an indictment.  Judge Burns'

17   words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the

18   grand jurors disagree with a proposed prosecution, because they do not say that.  That aspect of a grand

19   jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas

20   in its discussion of another instruction wherein the term "should" was germane.[4/]  408 F.3d at 1204-06

21   ("'Should' Indict if Probable Cause Is Found").  This other instruction bestows discretion on the grand

22

23

24        [4/]      That instruction is not at issue here.  It read as follows:

25             [Y]our task is to determine whether the government's evidence as presented to
             you is sufficient to cause you to conclude that there is probable cause to believe that the
26           accused is guilty of the offense charged.   To put it another way, you should vote to
             indict where the evidence presented to you is sufficiently strong to warrant a reasonable
27           person's believing that the accused is probably guilty of the offense with which the
             accused is charged.
28

     408 F.3d at 1187.

                                                    10

jury not to indict.[5/]  In finding this instruction constitutional, the court stated in words that ring true here,

"It is the grand jury's position in the constitutional scheme that gives it its independence, not any

instructions that a court might offer."  408 F.3d at 1206.  The other instruction was also given by Judge

Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward.  If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Defense Exhibit A (Reporter's Partial Transcript) pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime.  Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Defense Exhibit A (Reporter's Partial Transcript) p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom

of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not

to return an indictment per Navarro-Vargas.  Further, if a potential grand juror could not be dissuaded

from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential

---

[5/]     The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.   The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.   As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States  v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment.  408 F.3d at 1206.

11

1   jury nullification advocate.  See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005).  Thus,

2   there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising

3   its supervisory powers.

4          Further, a reading of the dialogues between Judge Burns and the three excused jurors found in

5   the Supplemental Transcript excerpts (Defense Exhibit B) reflects a measured, thoughtful, almost mutual

6   decision, that those three individuals should not serve on the grand jury because of their views.  Judge

7   Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand

8   jurors, but merely bespeaks a reminder to the grand jury of their duties.

9          Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced

10  thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision

11  to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted."

12  Isgro, 974 F.2d at 1094.

13          3.      The Addition to the "United States Attorney and his Assistant United
                    States Attorneys" Instruction Did Not Violate the Constitution

14

15      Concerning the new grand jurors' relationship to the United States Attorney and the Assistant

16  U.S. Attorneys, Judge Burns variously stated:

            [T]here's a close association between the grand jury and the U.S. Attorney's Office.

17

18          . . . . You'll work closely with the U.S. Attorney's Office in your investigation
            of cases.

19  Defense Exhibit A (Reporter's Partial Transcript) p. 11.

20          [I]n my experience here in the over 20 years in this court, that kind of tension does not
            exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries.

21          They generally work together.

22  Defense Exhibit A (Reporter's Partial Transcript) p. 12.

23          Now, again, this emphasizes the difference between the function of the grand jury
            and the trial jury.  You're all about probable cause.  If you think that there's evidence out

24          there that might cause you to say "well, I don't think probable cause exists," then it's
            incumbent upon you to hear that evidence as well.  As I told you, in most instances, the

25          U.S. Attorneys are duty-bound to present evidence that cuts against what they may be
            asking you to do if they're aware of that evidence.

26

27

28

                                                  12

1    Defense Exhibit A (Reporter's Partial Transcript) p. 20.[6/]

2
        As a practical matter, you will work closely with government lawyers.  The U.S.
3        Attorney and the Assistant U.S. Attorneys will provide you with important services and
        help you find your way when you're confronted with complex legal matters.  It's entirely
        proper that you should receive the assistance from the government lawyers.

4
        But at the end of the day, the decision about whether a case goes forward and an
5        indictment should be returned is yours and yours alone.  If past experience is any
        indication of what to expect in the future, then you can expect that the U.S. Attorneys
6        that will appear in front of you will be candid, they'll be honest, that they'll act in good
        faith in all matters presented to you.

7
     Defense Exhibit A (Reporter's Partial Transcript) pp. 26-27.
8
            Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts
9
     against what they may be asking you to do if they're aware of that evidence," Defendant proposes that
10
     by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to
11
     them evidence that tended to undercut probable cause."  [Def. Mot. at 16.]  Defendant then ties this
12
     statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S.
13
     Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good
14
     faith in all matters presented to you.'"  [Def. Mot. at 16.]  From this lash-up Defendant contends:
15
        These instructions create a presumption that, in cases where the prosecutor does
16        not present exculpatory evidence, no exculpatory evidence exists.  A grand juror's
        reasoning, in a case in which no exculpatory evidence was presented, would proceed
17        along these lines:

18        (1) I have to consider evidence that undercuts probable cause.

19        (2) The candid, honest, duty-bound prosecutor would, in good faith, have
        presented any such evidence to me, if it existed.
20
        (3) Because no such evidence was presented to me, I may conclude that
21        there is none. Even if some exculpatory evidence were presented, a grand
        juror would necessarily presume that the evidence presented represents
22        the universe of all available exculpatory evidence; if there was more, the
        duty-bound prosecutor would have presented it.
23
        The instructions therefore discourage investigation--if exculpatory evidence were
24        out there, the prosecutor would present it, so investigation is a waste of time and provide

25   _____

26        [6/]      Just prior to this instruction, Judge Burns had informed the grand jurors that:

27        [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown
        trial, you're likely in most cases not to hear the other side of the story, if there is another
28        side to the story.

     Defense Exhibit A (Reporter's Partial Transcript) p. 19.

1  additional support to every probable cause determination: i.e., this case may be week
2  [sic], but I know that there is nothing on the other side of the equation because it was not
   presented.  A grand jury so badly misguided is no grand jury at all under the Fifth
3  Amendment.

   [Def. Mot. at 16-17.]   (Emphasis added.)[7]
4
5  Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that

6  cuts against what they may be asking you to do if they're aware of that evidence," is directly

7  contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no

8  obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor

9  can be said to have a binding obligation to present it."[8]  (emphasis added)).  See also, United States v.

10 Haynes, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the government's failure to

11 introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation

12 to disclose 'substantial exculpatory evidence' to a grand jury."  (citing Williams) (emphasis added)).

13 However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns

14 was a member of the United States Attorney's Office, and made appearances in front of the federal grand

15

16

17

18 _____

19   [7]      The term "presumption" is too strong a word in this setting.  The term "inference" is more
   appropriate.  See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive
20 inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and
   explains the difference between the three.  963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S.
21 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S.
   140, 157 & n. 16 (1979)).  See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

22   [8]      Note that in Williams the Court established:

23       Respondent does not contend that the Fifth Amendment itself obliges the
       prosecutor to disclose substantial exculpatory evidence in his possession to the grand
24     jury.   Instead, building on our statement that the federal courts "may, within limits,
       formulate procedural rules not specifically required by the Constitution or the Congress,"
25     he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts'
       "supervisory power."

26 504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no authority to
   prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority
27 over their own proceedings."  504 U.S. at 55.  See also, United States v. Haynes, 216 F.3d 789, 797-98
   (9th Cir.  2000).  However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers
28 would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.
   974 F.2d at 1096.

14

jury.[9/]  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual

("USAM").[10/]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[11/]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of

Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the

policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a

subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ."

(Emphasis added.)[12/]

The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed

guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.

No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-

imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the

---

[9/]      He recalled those days when instructing the new grand jurors.  [Defense Exhibit A (Reporter's Partial Transcript) pp. 12, 14-16, 17-18.]

[10/]     The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html.

[11/]     See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm.  Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[12/]      See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E".  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

15

prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[13] If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[14] There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on

---

[13] Recall Judge Burns also told the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Defense Exhibit A (Reporter's Partial Transcript) p. 19.

[14] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

16

1   United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant

2   since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed

3   policy.[15]/   Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was

4   unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast

5   an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or

6   any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates

7   Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory

8   comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that

9   it stands between the government and the accused and is independent,"  which was also required by

10  Navarro-Vargas.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not

11  mean the instructions were constitutionally defective requiring dismissal of this indictment or any

12  indictment.

13      The "duty bound" statement constitutional contentions raised by Defendant do not indicate that

14  the "'structural protections of the grand jury have been so compromised as to render the proceedings

15  fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant

16  can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects

17  the fundamental fairness of the proceeding or if the independence of the grand jury is substantially

18  infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this Indictment, or any other

19  indictment, need not be dismissed.

20      **C.    PRESERVE AND INSPECT EVIDENCE**

21      The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing

22  Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that

23  are within its possession, custody, or control, and that is either material to the preparation of Defendant's

24  defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was

25  obtained from or belongs to Defendant.

26

27

28      [15]/    The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

The United States opposes Defendant's motion to preserve "any videotapes  capturing Ms. Cornell Jones in this matter."  Defendant's motion was not filed until January 17, 2008.  This is more than 2 months after Defendant's arrest at the San Ysidro, Port of Entry.  If any videotapes of the port of entry existed from the Port of Entry, that captured Defendant, they have likely been recorded over.

### D.     THE GOVERNMENT WILL COMPLY WITH DISCOVERY OBLIGATIONS

The Government intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure.  The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

### (1)     The Defendants' Statements

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements.  The Government has produced all of Defendant's written statements that are known to the undersigned Assistant U.S. Attorney at this date and has also produced all available videotapes and/or audiotapes. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers.  See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses).  However, the Government objects to providing Defendant with a copy of any rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report).  The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this

18

1   case do not constitute "statements" in accordance with the Jencks Act.  See United States v. Ramirez,

2   954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where

3   notes were scattered and all the information contained in the notes was available in other forms).  The

4   notes are not Brady material because the notes do not present any material exculpatory information, or

5   any evidence favorable to Defendant that is material to guilt or punishment.  Brown, 303 F.3d at 595-96

6   (rough notes were not Brady material because the notes were neither favorable to the defense nor

7   material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994)

8   (mere speculation that agents' rough notes contained Brady evidence was insufficient).  If, during a

9   future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or

10  Brady, the notes in question will be provided to Defendant.

11              **(2)     Arrest Reports, Notes and Dispatch Tapes**

12          The United States has provided Defendant with arrest reports. As noted previously, agent rough

13  notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

14              **(3)     Brady Material**

15          Again, the United States is well aware of and will continue to perform its duty under Brady v.

16  Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory

17  evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however,

18  is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused,

19  or which pertains to the credibility of the United States' case.  As stated in United States v. Gardner, 611

20  F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to

21  disclose every bit of information that might affect the jury's decision; it need only disclose information

22  favorable to the defense that meets the appropriate standard of materiality."  Id. at 774-775 (citation

23  omitted).

24          The United States will turn over evidence within its possession which could be used to properly

25  impeach a witness who has been called to testify.

26          Although the United States will provide conviction records, if any, which could be used to

27  impeach a witness, the United States is under no obligation to turn over the criminal records of all

28  witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

19

1   information, disclosure need only extend to witnesses the United States intends to call in its case-in-

2   chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

3   1305, 1309 (9th Cir. 1979).

4        Finally, the United States will continue to comply with its obligations pursuant to United States

5   v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

6                    **(4)    Sentencing Information**

7        Defendant claims that the United States must disclose any information affecting Defendant's

8   sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83

9   (1963).  The United States respectfully contends that it has no such disclosure obligation under Brady.

10       The United States is not obligated under Brady to furnish a defendant with information which

11  he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule of

12  disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the

13  defendant.  In such case, the United States has not suppressed the evidence and consequently has no

14  Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

15       But even assuming Defendant does not already possess the information about factors which

16  might affect their guideline range, the United States would not be required to provide information

17  bearing on Defendants' mitigation of punishment until after Defendants' conviction or plea of guilty and

18  prior to their respective sentencing dates.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th

19  Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when

20  the disclosure remains in value.").  Accordingly, Defendant's demand for this information is premature.

21                    **(5)    Defendant's Prior Record.**

22       The United States has already provided Defendant with a copy of his criminal record in

23  accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

24                 **(6)    Proposed 404(b) Evidence and 609 Evidence**

25       Should the United States seek to introduce any similar act evidence pursuant to Federal Rules

26  of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of

27  such evidence and information about such bad act at the time the United States' trial memorandum is

28  filed.

At this time, the United States intends to introduce as evidence Defendants June 17, 2007, apprehension for alien smuggling at the San Ysidro, Port of Entry to show absence of mistake and knowledge.

### (7)    Evidence Seized

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

### (8)    Preservation of Evidence

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules.  However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.  The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

Again, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

### (9)    Tangible Objects

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of

21

1   Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at

2   trial, or was obtained from or belongs to Defendant.   The Government need not, however, produce

3   rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

4                      **(10)    Evidence of Bias or Motive to Lie**

5        The United States is unaware of any evidence indicating that a prospective witness is biased or

6   prejudiced against Defendant.  The United States is also unaware of any evidence that prospective

7   witnesses have a motive to falsify or distort testimony.

8                      **(11)    Impeachment Evidence**

9        As stated previously, the United States will turn over evidence within its possession which could

10  be used to properly impeach a witness who has been called to testify.

11                     **(12)    Criminal Investigation of Government Witness**

12       Defendant is not entitled to any evidence that a prospective witness is under criminal

13  investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government]

14  witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United

15  States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution

16  witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586

17  F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no

18  discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records

19  of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

20       The Government will, however, provide the conviction record, if any, which could be used to

21  impeach witnesses the Government intends to call in its case-in-chief.   When disclosing such

22  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

23  chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

24  1305, 1309 (9th Cir. 1979).

25                     **(13)    Evidence Affecting Perception, Recollection, or Truth-Telling**

26       The United States is unaware of any evidence indicating that a prospective witness has a problem

27  with perception, recollection, communication, or truth-telling.

28  //

22

(14)    **Witnesses Favorable to the Defendant**

As stated earlier, the Government will continue to comply with its obligations under Brady and its progeny. The Government is not aware of any witnesses who have made an "arguably favorable statement concerning the defendant or who could not identify him or who w[ere] unsure of his identity, or participation in the crime charged." [Def. Mtn. at 7.]

(15)    **Statements Relevant to the Defense**

To reiterate, the United States will comply with all of its discovery obligations. However, "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted). Further, Defendant is not entitled to the Grand Jury transcripts.

(16)    **Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

//

//

//

23

1     (17)    **Giglio Information**

2         As stated previously, the United States will comply with its obligations pursuant to <u>Brady v.</u>

3     <u>Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991),

4     and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

5     (18)    **Agreements Between the Government and Witnesses**

6         The Government has not made or attempted to make any agreements with prospective

7     Government witnesses for any type of compensation for their cooperation or testimony.

8     (19)    **Informants and Cooperating Witnesses**

9         The Government must generally disclose the identity of informants where (1) the informant is

10    a material witness, or (2) the informant's testimony is crucial to the defense. <u>Roviaro v. United States</u>,

11    353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some

12    circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the

13    informant's identity is required under <u>Roviaro</u>. <u>See</u> <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501,

14    1508 (9th Cir. 1997). If the Government determines that there is a confidential informant who is a

15    material witness in this case, the Government will either disclose the identity of the informant or submit

16    the informant's identity to the Court for an in-chambers inspection.

17    (20)    **Bias by Informants or Cooperating Witnesses**

18        As stated above, the United States is unaware of any evidence indicating that a prospective

19    witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence

20    that prospective witnesses have a motive to falsify or distort testimony.

21    (21)    **TECS Reports**

22        Defendants are not entitled to TECS reports. Prior border crossings do not fall within the scope

23    of 404(b) unless offered for a purpose consistent with 404(b).

24    (22)    **Expert Summaries**

25        The Government will comply with Rule 16(a)(1)(G) and provide Defendants with a written

26    summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of

27    the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the expert

28    witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

24

1   It is expected that the Government will call expert witnesses in the fields of drug value and drug

2   analysis.  It is anticipated that the drug analysis expert will identify the substance seized from

3   Defendant's vehicle as marijuana.  Further, it is anticipated that the drug value expert will opine that the

4   drugs found in Defendant's vehicle were very valuable.

5               **(23)    Residual Request**

6   The Government has already complied with Defendant's request for prompt compliance with

7   its discovery obligations.  The Government will comply with all of its discovery obligations, but objects

8   to the broad and unspecified nature of Defendant's residual discovery request.

9   **E.      DEFENDANT'S SUPPRESSION MOTION SHOULD BE DENIED**

10  **1.      Defendant Has Failed to Provide a Sworn Declaration**

11  Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal

12  Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress <u>only</u> when

13  the defendant adduces specific facts sufficient to require the granting of the defendant's motion.  <u>United</u>

14  <u>States v. Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress,

15  failed to dispute any material fact in the government's proffer.  In these circumstances, the district court

16  was not required to hold an evidentiary hearing."); <u>United States v. Moran-Garcia</u>, 783 F. Supp. 1266,

17  1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was

18  insufficient to require evidentiary hearing on defendant's motion to suppress statements).  Specifically,

19  Local Criminal Rule 47.1(g)(1) states that "[c]riminal motions requiring predicate factual finding shall

20  be supported by declaration(s)" and that "[t]he Court need not grant an evidentiary hearing where either

21  party fails to properly support its motion for opposition."  Here, Defendant has failed to support her

22  allegations with a declaration, in clear opposition to Local Rule 47.1(g).  The Ninth Circuit has held that

23  a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence

24  because the defendant did not properly submit a declaration pursuant to a local rule.  <u>United States v.</u>

25  <u>Wardlow</u>, 951 F.2d 1115, 1116 (9th Cir. 1991).

26  Defendant moves to suppress the statements made by her to agents.  Next, Defendant requests

27  an evidentiary hearing to establish the facts and to aid the Court in deciding her suppression motion;

28  however, she does not support her request with a declaration.  Nonetheless, if the Court chooses to hold

1   an evidentiary hearing on Defendant's motion at a future date, the United States would welcome the

2   opportunity to prove that Defendant's statements were voluntary and are, therefore, admissible.

3              **2.    Defendant's Statements Were Voluntary**

4          Defendant moves to suppress her post-<u>Miranda</u> statements and requests that the United States

5   prove that all statements were voluntarily made after a knowing and intelligent <u>Miranda</u> waiver.

6   Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether

7   Defendant's statements were voluntary.  Defendant did not file a declaration or present any other

8   evidence in support of her motion.  Defendant's motion to suppress statements should be denied without

9   an evidentiary.  The Ninth Circuit has noted that even if a defendant provides factual allegations, the

10  court may still deny an evidentiary hearing if the grounds for suppression consist solely of conclusory

11  allegations of illegality.  <u>See</u> <u>United States v. Wilson</u>, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court

12  Judge Gordon Thompson did not abuse his discretion in denying a request for an evidentiary hearing

13  where the appellant's declaration and points and authorities submitted in support of motion to suppress

14  indicated no contested issues of fact).  Defendant had an opportunity, in her moving papers, to proffer

15  any facts alleging violations of his rights, but failed to do so.  Instead, Defendant merely cited generic

16  <u>Miranda</u> law. The mere incantation of boilerplate language fails to generate a disputed factual issue

17  requiring an evidentiary hearing.  <u>See</u> <u>United States v. Howell</u>, 231 F.3d 615, 623 (9th Cir. 2000).

18         A waiver under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), must be voluntary, knowing, and

19  intelligent.  <u>Colorado v. Connelly</u>, 479 U.S. 157, 169-70 (1986).  The United States bears the burden

20  of showing by a preponderance of the evidence that a defendant waived his <u>Miranda</u> rights.  <u>Johnson</u>

21  <u>v. Zerbst</u>, 304 U.S. 458, 464 (1938); <u>Terrovona v. Kincheloe</u>, 912 F.2d 1176, 1180 (9th Cir. 1990).

22         In order to establish a valid waiver, the United States must show two things: (1) the

23  relinquishment of the right was voluntary in the sense that it was the product of a free and deliberate

24  choice rather than intimidation, coercion, or deception; and (2) the waiver was made with a full

25  awareness both of the nature of the right being abandoned and the consequences of the decision to

26  abandon it. If the totality of the circumstances surrounding the interrogation reveal both an uncoerced

27  choice and the requisite level of comprehension, a valid waiver has occurred.  <u>Colorado v. Spring</u>, 479

28  U.S. 564, 573 (1987); <u>United States v. Harrison</u>, 34 F.3d 886, 890 (9th Cir. 1994); <u>United States v.</u>

1    Bautista-Avila, 6 F.3d 1360, 1364-66 (9th Cir. 1993); Derrick v. Peterson, 924 F.2d 813, 820-21 (9th Cir.

2    1990).

3         The agents who questioned Defendant specifically covered her rights. Officer Bracamonte read

4    Defendant her rights in English, witnessed by the Agent Lindung. The Defendant told the agents that

5    she understood her rights and agreed to speak with the agents. In fact, the Defendant was asked on

6    multiple occasions if she understood her rights, prior to the agents asking her about the incident. This

7    entire interaction was recorded on DVD and provided to Defense Counsel. During the course of the

8    interview, the Defendant invoked her right to an attorney and Agent Bracamonte and Lindung stopped

9    the interview. A third agent, who may not have been aware of the invocation, waited in the interview

10   room with Defendant while the other agents were taking care of paperwork. During this very brief time,

11   the Agent was conversing with Defendant. The United States does not seek to introduce any statements

12   made by Defendant during this time, however, such statements are admissible as impeachment, should

13   the Defendant choose to testify.

14        The Ninth Circuit  has found a waiver to be knowing and intelligent when a defendant has said,

15   in response to questions by the police, that he or she understands his or her rights, and that the defendant

16   is willing to talk. See, e.g., United States v. George, 987 F.2d 1428, 1431 (9th Cir. 1993); United States

17   v. Gordon, 974 F.2d 1110, 1116 (9th Cir. 1992). In the present case Defendant expressed her willingness

18   to answer questions and signed a written waiver which is compelling evidence of a valid waiver. See

19   e.g., United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1997) ("[A] written waiver of one's

20   Miranda rights is strong evidence that the waiver is valid.").

21        As such, the proper test is whether the totality of circumstances reflect that Defendant's

22   statement was the product of a rational intellect and a free will. See Blackburn v. Alabama, 361 U.S.

23   199, 208 (1960). In this instance it clearly was.

24        **F.     LEAVE TO FILE FURTHER MOTIONS**

25        The United States does not oppose Defendant's request to file further motions if they are

26   based on new discovery or other information not available to Defendant at the time of this motion

27   hearing.

28   *//*

27

# IV.

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motions except where unopposed.

DATED: January 22, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

S/ A. Dale Blankenship
A. DALE BLANKENSHIP
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Dale.Blankenship@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07CR03410-DMS |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| KATHLEEN CORNELL JONES, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of Government's Response and Opposition to Defendant's Motions to: 1) dismiss the indictment due to unconstitutionality of drug statute; 2) dismiss indictment due to improper Grand Jury instructions; and, 3) preserve and inspect evidence; 4) compel discovery; 5) suppress statements; and 6) leave to file further motions, together with statement of facts and memorandum of points and authorities on the following by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Jodi D. Thorp, Esq.
Attorney for Defendant
jodithorp@thorplawoffice.com

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None.

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 22, 2008.

s/ A. Dale Blankenship
A. DALE BLANKENSHIP